UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHEICKNA SOUMARE,

    Plaintiff,

    v.

HOA BOARD OF DIRECTORS,
PRESERVE AT ROCK CREEK, *managed by
Property Management People (PMP)*,

    Defendant.

Civil Action No. TDC-23-3356

## MEMORANDUM OPINION

Self-represented Plaintiff Cheickna Soumare has filed this civil action against Defendant HOA Board of Directors, Preserve at Rock Creek, in which he alleges violations of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901–4043 (2018), and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301–4335 (2018), arising out of his removal from the Board of Directors of a homeowners' association. Defendant has filed a Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

Soumare is a United States Army officer who resides in a neighborhood known as Preserve at Rock Creek ("Preserve") in Montgomery County, Maryland. Beginning in 2018, Soumare served as a member of the Board of Directors ("the Board") of Preserve at Rock Creek Community Association, Inc. ("the Association"), the homeowners' association for Preserve. On May 23,

2023, Robert Bertrand, the President of the Board, sent an email to Soumare in which he noted that Soumare had not attended recent Board meetings, requested that Soumare resign from the Board if he could no longer attend meetings, and stated that if Soumare was willing and able to serve, Soumare should attend the next Board meeting and actively participate. In a May 29, 2023 email response, Soumare apologized for having missed Board meetings, noted that his military service contributed to his absences, and expressed interest in serving on the Board through the remainder of his term, which was set to expire in June 2024.

On May 30, 2023, Soumare attended a virtual Board meeting ("the Meeting"). At the outset, Bertrand asked Soumare to explain his reasons for missing meetings and his intentions regarding continued service on the Board. Although Soumare apologized and began to provide reasons for his absences, Damon Riley, another Board member, interrupted Soumare, stated that the Board members had already agreed to remove Soumare, and made a motion to do so. Riley further stated that Soumare's absences were "ridiculous and that [Soumare] should have known better than that." Compl. at 2, ECF No. 3. Bertrand muted Soumare's microphone so that he could not respond, and the Board proceeded to consider a motion to allow Soumare to continue on the Board until the June 2023 meeting, at which time Soumare would have to seek election to remain on the Board. The Meeting notes state that Soumare "has missed too many meetings and per bylaw has been automatically removed from the board," and that the motion to appoint Soumare back to the Board until the next Board election was approved. *Id.* at 17.

After the Meeting, Soumare sent an email to the Board in which he asserted that his absences were protected under both the SCRA and USERRA. Later that evening, Soumare received an email from a law firm associated with Preserve notifying him that a payment for Association fees had been voided. Believing that the Board was using the voided payment to

provide another basis for his removal from the Board, Soumare sent a relative to pay the fees for the next 12 months in person. The payment was accepted on July 10, 2023.

When Soumare did not submit a form stating his intent to seek election to the Board at the June 2023 meeting, the Board notified him that he had been removed from the Board for not doing so. Soumare responded that he did not need to seek election because his original term as a Board member had not yet expired.

Soumare has attached an excerpt from the Association's by-laws ("the By-Laws") consisting of the provision governing the removal of Board members. Section 4.3 of the By-Laws provides that "the term of office of any Director who shall be absent, without reasonable cause, from three (3) consecutive regular meetings of the Board of Directors shall automatically terminate upon commencement of the next regular meeting of the Board following such Director's third consecutive absence." *Id*. at 26. The same section also provides that the "term of office of any Director who becomes more than sixty (60) days delinquent in payment of Assessments against the Living Unit of which he or she is the Owner shall automatically terminate on the sixty-first (61st) day." *Id*. The By-Laws further provide that "No Director shall receive compensation for any service he or she may render to the Association." By-Laws § 4.4, Mot. Dismiss Ex. 1, ECF No. 15-2.

On July 24, 2023, Soumare filed this civil action against the Association in the Circuit Court for Montgomery County, Maryland. In the Complaint, Soumare alleges violations of the SCRA and USERRA arising out of his removal from the Board and, as relief, seeks his reinstatement to the Board through June 2024. On December 11, 2023, the Association removed the case to this Court based on federal question jurisdiction.

## DISCUSSION

In its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Association argues that Soumare fails to state a claim for relief under both the SCRA and USERRA. In his memorandum in opposition to the Motion ("Opposition"), Soumare argues that the Association has violated both the SCRA and USERRA, and he alleges, for the first time, a claim of intentional infliction of emotional distress.

### I.  Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus.* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Ordinarily, on a Rule 12(b)(6) motion, the Court considers only the allegations in the complaint and its attachments. Fed. R. Civ. P. 12(d); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts are permitted to consider a document attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea*

4

*Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). With its Motion, the Association has attached as exhibits a copy of the By-Laws, as well as a July 17, 2023 letter sent by the Board to Soumare stating the Board's position on the reasons for Soumare's removal. Where the Complaint includes as an exhibit an excerpt of the By-Laws, the Court will consider the full By-Laws as integral to the Complaint. However, the Court will not consider the letter, as it is neither integral to, nor explicitly relied upon in, the Complaint.

## II.   SCRA

In its Motion, the Association argues that Soumare has not alleged sufficient facts to state a plausible claim for relief under the SCRA. In the Opposition, Soumare argues that the SCRA bars the Association from removing him from the Board because of absences or non-payment of homeowners' association fees and specifically references 50 U.S.C. § 3933(a) as the relevant provision of the SCRA.

The SCRA "is part of a long record of congressional concern for the domestic affairs of those in military service." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 457 (4th Cir. 2011). One purpose of the SCRA is "to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C. § 3902(2). It "applies to any judicial or administrative proceeding commenced in any court or agency in any jurisdiction subject to" the SCRA, but it "does not apply to criminal proceedings." *Id.* § 3912(b). The SCRA also provides protections to service members from certain actions relating to rent, installment contracts, mortgages, liens, assignment, leases, communications service contracts, life insurance, and taxes. *See id.* §§ 3951–3959, 3971–3979, 3991–4001. "Any person aggrieved by a violation of" the

SCRA "may in a civil action . . . obtain any appropriate equitable or declaratory relief with respect to the violation." *Id.* § 4042(a)(1).

Here, 50 U.S.C. § 3933 does not provide a basis for relief. That section provides that when "an action for compliance with the terms of a contract is stayed pursuant to this chapter, a penalty shall not accrue for failure to comply with the terms of the contract during the period of the stay." *Id.* § 3933(a). However, the requirement of a stayed "action for compliance with the terms of a contract" necessarily refers to a civil action stayed pursuant to 50 U.S.C. § 3932, which provides that a "civil action or proceeding" involving a party engaged in military service should be stayed when that party's military duties prevent an appearance in that case. *Id.* § 3932(a). Thus, while § 3933(a) would prevent a service member from having to pay penalties that accrue during the pendency of a stay of such a civil case, it is inapplicable here because there was no civil action filed against Soumare, much less one that was stayed. *See id.* § 3912(b) (noting that "proceedings" consist of "judicial or administrative proceedings commenced in any court or agency"). Soumare has not alleged violations of any other specific sections of the SCRA, and upon a review of the other sections of the SCRA, the Court has not identified any that provides a remedy for the conduct at issue in this case—allegedly improper cancellation of a payment of homeowners' association fees and alleged removal from the board of a homeowners' association due to absences from meetings or non-payment of fees. Therefore, the Motion will be granted as to the SCRA claim.

### III.  USERRA

The Association also seeks dismissal of the USERRA claim on the grounds that Soumare has not alleged sufficient facts to state a plausible claim for relief. Soumare argues that the Association violated USERRA by removing him from the Board when his absences were based in part on his military service.

6

USERRA prohibits employment discrimination "against persons because of their service in the uniformed services." *Kitlinski v. U.S. Dep't of Justice*, 994 F.3d 224, 229 (4th Cir. 2021) (quoting *Butts v. Prince William Cnty. Sch. Bd.*, 844 F.3d 424, 430 (4th Cir. 2016)). USERRA prohibits employers from engaging in discrimination against service members in their "initial employment, reemployment, retention in employment, promotion, or any benefit of employment," 38 U.S.C. 4311(a), as well as engaging in discrimination "in employment against" or taking "any adverse employment action against any person because such person . . . has taken an action to enforce a protection afforded" under USERRA. *Id.* § 4311(b). Under either provision, the defendant must be an "employer" who has taken an "adverse employment action" against the plaintiff. *Kitlinski*, 994 F.3d at 229. Under USERRA, "the term 'employer' means any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities." 38 U.S.C. § 4303(4)(A). An "employee" is "any person employed by an employer." *Id.* § 4303(3). Where an entity neither paid salary or wages for work performed nor exercised control over employment opportunities, that entity is not an "employer" under USERRA. *See Jolley v. U.S. Dep't of Justice*, 602 F. App'x 805, 807 (Fed. Cir. 2015).

Here, Soumare has acknowledged that his Board service was unpaid, and he has identified no benefits of value that he received because of his Board service. Moreover, the By-Laws confirm that "[n]o Director shall receive compensation for any service he or she may render to the Association." By-Laws § 4.4. Soumare has also not alleged any facts, or provided any basis to conclude, that the Board exercised control over his employment opportunities. Soumare has thus failed to allege plausibly that the Association was an "employer" such that its actions in relation to his Board service are covered by USERRA. *See* 38 U.S.C. § 4311. Accordingly, the Motion will be granted as to the USERRA claim.

### IV.   IIED

Finally, Soumare asserts for the first time in his Opposition that the Association committed the tort of intentional infliction of emotional distress ("IIED") against him by inviting him to the Meeting with the purpose of humiliating him. This assertion does not provide a basis to avoid dismissal of this case for two reasons. First, Soumare did not include an IIED claim in the Complaint, and he may not amend the Complaint through the Opposition. *Mylan Labs., Inc. v. Akzo*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984))), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). Thus, the IIED claim is not properly before the Court.

Second, even if Soumare were permitted to amend the Complaint to add an IIED claim, the case would then be dismissed for lack of subject matter jurisdiction. This Court's original jurisdiction over this case was based on federal question jurisdiction relating to the SCRA and USERRA claims, but with the ruling on the present Motion, the Court will have dismissed all federal claims in the Complaint. From the pleadings, there is no diversity jurisdiction over this case because the parties are not citizens of different states. *See* 28 U.S.C. § 1332 (2018). Under these circumstances, when all federal claims have been dismissed, the Court may decline to exercise supplemental jurisdiction over any remaining state law claims that "form part of the same case or controversy." *Id.* § 1367(a), (c)(3). Where this case has yet to proceed beyond a motion to dismiss, it has not reached the point that judicial economy and fairness to the litigants would

8

warrant retention of federal jurisdiction over the case. Thus, the Court would decline to exercise supplemental jurisdiction over any newly asserted state law claims and would dismiss them for lack of subject matter jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Accordingly, although Soumare may have a legitimate grievance that he was mistreated by the Board, the reference to an IIED claim does not provide a basis to refrain from dismissal of this case.

## CONCLUSION

For the foregoing reasons, the Association's Motion to Dismiss will be GRANTED. A separate Order shall issue.

Date:   February 28, 2024

THEODORE D. CHUANG
United States District Judge